IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| LOCAL 689, AMALGAMATED TRANSIT UNION, | } } | |
| Plaintiff, | } | Case No. __1:17-cv-01448____ |
| | } } | |
| v. | } } | COMPLAINT AND MOTION TO COMPEL ARBITRATION |
| | } | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | } } | |
| | } | |
| Defendant. | } | |
| _____ | } | |

COMPLAINT AND MOTION TO COMPEL ARBITRATION

Plaintiff Union, Local 689, Amalgamated Transit Union, now brings this action to compel arbitration. For the reasons which follow, this dispute is urgent to assist the parties in prompt resolution of an ongoing labor dispute over the discharge of approximately 20 Union members.

JURISDICTION

1.     Original jurisdiction of civil disputes in which WMATA is a party lies in the United States District Courts, WMATA Compact Va. Code §33.2-3100(81) (Adopted by Congress as P.L. 89-774). The Plaintiff Local 689, ATU (the "Union" or "Local 689") represents many employees of WMATA who perform work all over the transit system

-2-

including in Virginia, thus supporting venue in this Court. Finally, this action is delimited

by the provisions of the United States Arbitration Act, 9 U.S.C. Section 9, and the

Virginia Uniform Arbitration Act (VUAA), Va. Code Chapter 21, Article 2. (Compact

Sections Attached, Complaint Exhibit A)

The Parties

2.      Plaintiff Local 689, Amalgamated Transit Union, represents in collective bargaining

operators, mechanics and many clerical workers, comprising a majority of those

employed by the Defendant Washington Metropolitan Area Transit Authority.  Local 689

has represented such workers since the inception of WMATA in 1973  and those of

predecessor transit operators in the Washington, D.C. area, continuously for over 80

years.  The Union's offices are located at 2701 Whitney Place, Forestville, MD 20747.

3.      Defendant Washington Metropolitan Area Transit Authority ("WMATA") is political

subdivision of the District of Columbia, Commonwealth of Virginia and the State of

Maryland, created by legislative compact among those jurisdictions and by the United

States of America to provide mass transportation services to citizens who travel within

and among all three jurisdictions. WMATA owns and operates Metrobus, Metrorail and

MetroAccess transportation systems (MetroAccess service operated through contracts

with various private companies) and has the capacity to sue and be sued. WMATA labor

relations are authorized and depicted in Section 66 of the Compact, Va. Code §33.2-

3100(81).   WMATA's principal office is located at 600 5th Street, NW, Washington, DC,

20001.

-3-

The Parties' Relationships

4.      Local 689, ATU constitutes an "accredited representative" under Compact Section 66 (b),

        of a majority of WMATA employees who work in a wide variety of non-supervisory

        occupations, including but not limited to operators and mechanics on WMATA's bus and

        subway transportation systems.

5.      Local 689, ATU and WMATA are parties to a comprehensive collective bargaining

        agreement which is currently open for re-negotiation but binding upon the parties pending

        revision or renewal.

6.      All "labor disputes," as defined by the WMATA Compact Section 66 ( c) which cannot

        be resolved through collective bargaining are subject to binding arbitration by a tripartite

        board of arbitrators, as described in that section. (Section 66( c) is Exhibit A)

7.      All "questions and grievances" which arise between the parties during the term of the

        existing collective bargaining agreement are subject to resolution through binding

        arbitration under Section 105 of the collective bargaining agreement.  (Exhibit B)

The Current Dispute

8.      John Evans served as a Track Walker or inspector for WMATA, until January 4, 2017

        when he was discharged, allegedly as a result of an investigation from the previous year.

9.      Within a few days, fifteen other Track Walkers or inspectors were also fired as a result of

        the same investigation.

10.     Mr. Evans filed a grievance, processed by the Union on his behalf, which was eventually

        invoked into arbitration by the Union.  (Exhibit C)

-4-

11.    Among other arguments on his behalf, Mr. Evans' grievance included the following

paragraph:

> This is a group grievance on behalf of trackwalkers discharged or
> suspended as a result of a report from Network Rail, including but not
> limited to Robert Bellamy, Glenn Proctor and Lawrence Simmons (note
> that other workers have been interviewed but not yet disciplined as a result
> of the report).  The discipline was based on reports turned in by the
> grievant before June 1, 2016, yet the discipline did not occur until
> December 13 or later, well beyond the time limit allowed under Section
> 104(d).  In addition, the reports filed were prepared consistently with the
> practice, understanding and training given to the Track Walkers to
> document their daily work.  WMATA management has changed its
> approach to assignment and review of trakc inspection and is attempting to
> apply the new stnadards retroactively.  Inthe process, WMATA is
> scapegoating these workers for insufficient track inspection which was
> intentionally designed by WMATA so as to avoid speed restrictions and
> immediate repair costs.  The culture and practice in track inspection has
> been to file routine reports and to discourage reporting problems which
> might disrupt rail operation.  Finally, the appropriate penalty for negligent
> or inadequate reporting would be progressive discipline, not immediate
> discharge.  Therefore, each grievant should be reinstate (where necessary)
> and be made whole, including back-pay for the time lost from work.

12.    A Board of Arbitration was empaneled for the grievance, consisting of Andrew Strongin,

Chairman, John Flood, WMATA appointee and Douglas Taylor, Union appointee.

Arbitration hearings were scheduled for three consecutive days, December 12, 13 and 14.

13.    The parties agree that the Board of Arbitration has the authority to determine whether the

discharge of John Evans was for "sufficient cause," (the contractual standard for

discharge by WMATA) but when the Union moved under the above grievance language

to present and arbitrate under the Evans case some 15 track walker discharges which

occurred contemporaneously with that of Mr. Evans, (List presented by the Union,

Exhibit D) WMATA responded as follows:

-5-

> And the Authority's position is, this decision on this motion is a matter of substantive arbitrability.  And we don't believe that the compact, or the CBA grants the arbitrator the authority to render a decision on the Union's Motion. . . . Because at this point we don't feel that the Union's motion can be considered over our objection.

(Transcript of Proceedings, Exhibit E, pp. 50-51)

14.   At the direction of the Board, the respective parties filed simultaneous memoranda on Friday, December 15, outlining their respective positions on the authority of the Board of Arbitration to conduct the proceeding as a group grievance, including the propriety of all 15 discharges.  (Exhibit E, p. 63)

15.   WMATA refused to proceed with evidence as to grievant Evans or any other Track Walker until the group grievance question was resolved; but persisted in its assertion that the Board of Arbitration did not have the authority to decide the questions of whether the Evans grievance was, in fact, a group grievance and whether the contract or compact precluded the Board from considering it.   In short, WMATA refused to present substantive evidence or argument as to any aspect of the Evans case, including the question of whether to proceed as a group grievance,  so long as the Union Motion to proceed as a group grievance was pending. (Exhibit E, p. 59)

16.   By order dated December 20, the Board of Arbitration unanimously agreed to stay the arbitration proceedings for nine days, or until Friday, December 29, in order to allow one party or the other to bring an action in court on the matter.  (Exhibit F)

-6-

## COUNT I - DEFENDANT WMATA REFUSES TO ARBITRATE
## TO RESOLVE LABOR DISPUTES, IN VIOLATION OF CONTRACT SECTION 105

17.     All allegations of paragraphs 1-16 are re-asserted as part of this Count.

18.     Section 105 of the collective bargaining agreement between Local 689, ATU and

WMATA includes the following:

> Questions or grievances that cannot be amicably adjusted by said
> conferences shall be submitted to a Board of Arbitration . . . the findings
> of a majority of said Board of Arbitration shall be final and binding.

19.     Section 105 of the collective bargaining agreement is lawful, as it is consistent with if not

required by the Compact language on labor dispute resolution, Section 66 ( c). (Exhibit

A)

20.     WMATA's refusal to submit the questions of whether John Evans' Grievance is a "group

grievance," or not and, further, whether or not group grievances are prohibited under the

collective bargaining agreement, violates Contract Section 105.


## COUNT II - DEFENDANT WMATA REFUSES TO ARBITRATE
## TO RESOLVE LABOR DISPUTES, IN VIOLATION OF COMPACT SECTION 66 ( c)

21.     All allegations of paragraphs 1-20 are re-asserted as part of this Count.

22.     Defendant WMATA and its officials are governed by and obliged to implement the

provisions of the Compact, including Section 66 ( c), which requires, inter alia, "In case

of any labor dispute involving the Authority and such employees where collective

bargaining does not result in agreement, the Authority shall submit such dispute to

arbitration...".

-7-

23. By failing or refusing to submit the dispute to a Board of Arbitration, WMATA violates the express terms of the WMATA Compact.

COUNT III - THE VIOLATIONS OF CONTRACT AND LAW REQUIRE URGENT ATTENTION, AS THEY DESTABILIZE THE PARTIES' LABOR RELATIONSHIP AND CONCERN SAFE OPERATION OF WMATA'S RAIL SYSTEM

24. All allegations of paragraphs 1-23 are re-asserted as part of this Count.

25. During the course of the grievance procedure, WMATA has refused to answer Union questions regarding whether and who has replaced Mr. Evans and the other discharged Track Walkers following the discharges.

26. Track Walkers perform vital inspections of the condition of WMATA rail, ties, ballast and switches, the devices which carry subway cars, every day.

27. Reducing the work force of trained, experienced Track Walkers by any substantial number (in this case, 15) without replacing them, or replacing them with individuals who are not trained or experienced in evaluating WMATA track conditions, would make the rail system extremely unsafe, jeopardizing passengers and other WMATA employees during each day of operation.

28. In the course of the arbitration proceeding in this matter, the Union is asking the Board of Arbitration to restore the system to safe operation, particularly in light of WMATA's refusal to explain what measures, if any, it has taken to preserve thorough inspection of its rail and switch system.

29. Due to WMATA's refusal to participate in the arbitration proceedings, full examination of the Track Walkers' role in safe operation and evaluation of the extent to which safety has been compromised by their removal is delayed further.

-8-

30.     The Board of Arbitration has allowed only a short period of time (until December 29, see Exhibit F) for the parties to obtain court relief seen by WMATA as a predicate for further arbitration proceedings.

31.     WMATA's disruption of the hearing has caused immediate and ongoing obstruction to a lawful arbitration proceeding, which is considering a matter of grave safety concern to WMATA workers (including those operating trains or working along the track) and to the riding public.

32.     WMATA has not advanced, and cannot advance, any significant impediment to the jurisdiction of the Board of Arbitration to determine the nature and scope of the Evan's Grievance Arbitration.

33.     Accordingly, the Plaintiff Union is likely to prevail on the merits and failure of the Board to proceed threatens to cause immediate, irreparable harm in the form of a train derailment.

Remedies

Based on the foregoing, the court should order without delay:

1.     That the arbitration proceeding resume without further delay, and that the arbitrators should determine, among other issues, whether the John Evans grievance is a group grievance and, if so, whether there is any reason in contract or law to prohibit the Board of Arbitration from adjudicating the validity of discharges of the entire group.

-9-

2.     That WMATA reimburse the Union for the cost of bringing this action and the cost, if any incurred by the delay associated with WMATA's refusal to proceed in arbitration on December 12, 13 and 14 as scheduled.

3.     Any further relief which the Court deems to be appropriate under the circumstances.


Defendant LOCAL 689,
AMALGAMATED TRANSIT UNION,
by its Counsel,

/s/  Douglas Taylor
_____
Douglas Taylor 41162
Paul M. Tyler
Brian Connolly

Gromfine, Taylor & Tyler
1420 King Street, Suite 500
Alexandria, VA   22314
(703) 683-7780
703.683.8616 (fax)
dtaylor@lbgt.com

-10-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiff ATU Complaint and Motion to Compel Arbitration, with Attachments, was served via email per agreement of the parties this 20th day of December, 2017 to:

Patricia Lee
General Counsel
WMATA
600 Fifth Street, NW
Washington, DC 20001

John B. Flood
John S. Bolesta
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1909 K Street NW, Suite 1000
Washington, DC 20006
Counsel for WMATA

/s/  Douglas Taylor

_____